1

2

3

**FILED**

4

**MAY 2 3 2001**

5

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

6

BY _____
DEPUTY CLERK

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9                          ----oo0oo----

10   In re:

11   OWEN AND DEBORAH GEORGE,

                                    NO. CIV. S-00-2754 WBS
12          Debtors,
     _____     MEMORANDUM OPINION
13
     UNINSURED EMPLOYERS FUND;
14   STEPHEN J. SMITH, DIRECTOR OF
     INDUSTRIAL RELATIONS,
15   DEPARTMENT OF INDUSTRIAL
     RELATIONS, STATE OF
16   CALIFORNIA,

17          Appellants,

18       v.

19   OWEN AND DEBORAH GEORGE,

20          Respondents.

21                          ----oo0oo----

22          Respondents filed an adversary proceeding in the United

23   States Bankruptcy Court for Eastern District of California to

24   enjoin appellants (collectively, "UEF") from enforcing their

25   claim for reimbursement.  On cross-motions for summary judgment,[1]

26   the bankruptcy court ruled in favor of respondents, finding that

27   _____

28          [1]   Rule 56 of the Federal Rules of Civil Procedure applies
     in adversary proceedings in bankruptcy.  Fed. R. Bankr. P. 7056.

                                    1

                                   17

1  UEF's claim was discharged under Chapter 7 of the Bankruptcy
2  Code, 11 U.S.C. § 727.   The UEF appeals the bankruptcy court's
3  order pursuant to 28 U.S.C. § 158(a).   This court reviews the
4  order de novo.

5  I.  Background

6        Under California law, the UEF provides workers'
7  compensation to the employees of "illegally uninsured" employers.
8  Cal. Ins. Code § 3716.  An uninsured, injured employee obtains
9  compensation by filing an application with California Workers'
10 Compensation Appeals Board ("WCAB").   Cal. Ins. Code § 3715.  The
11 UEF pays an award issued by the WCAB if the employer fails to pay
12 within ten days after notification of the award.   The payment of
13 an award by the UEF constitutes a "liquidated claim for damages"
14 against the uninsured employer.  Cal. Ins. Code § 3717(a).

15       On February 7, 2000, the WCAB awarded $116,007.03 to
16 one of respondent's employees for a work-related injury.   When
17 respondents failed to pay the award, the UEF began providing
18 compensation pursuant to section 3716.   As a result of the award,
19 the UEF recorded a lien against respondents' real property.  See
20 Cal. Ins. Code § 3720.

21       Prior to the WCAB's decision, respondents filed a
22 petition for bankruptcy under Chapter 7 of the Bankruptcy Code,
23 11 U.S.C. §§ 701, et seq.  The bankruptcy court entered an order
24 of general discharge on January 4, 1999.   Respondents filed this
25 suit to enjoin the UEF from enforcing its claim for
26 reimbursement, which they contend is discharged under Chapter 7.
27 The UEF argues that its claim is an "excise tax" and thus, exempt
28 from discharge under Chapter 7.

2

1  II.   Discussion

2          Section 523 of the Bankruptcy Code excludes from
3  discharge under Chapter 7 "any debt ... for a tax ... of the kind
4  and for the periods specified in section ... 507(a)(8)."  11
5  U.S.C. § 523(a)(1)(A).  Section 507(a)(8) provides priority for
6  "an excise tax on ... a transaction occurring during the three
7  years immediately preceding the date of the filing of the
8  [bankruptcy] petition."  11 U.S.C. § 507(a)(8)(E)(ii).  Thus, a
9  claim qualifying as an "excise tax" under section 507 is not
10 dischargeable under Chapter 7.

11         The Ninth Circuit has held that "to qualify as a tax, a
12 debt must be (1) an involuntary pecuniary burden; (2) imposed by
13 the state legislature; (3) for a public purpose; (4) under the
14 police or taxing power."  In re Camilli, 94 F.3d 1330, 1331 (9th
15 Cir. 1996) (citing In re Lorber Industries of California, 675
16 F.2d 1062 (9th Cir. 1982)); see also New York v. Feiring, 313
17 U.S. 283, 285 (1941) (defining "taxes" as "pecuniary burdens laid
18 upon individuals or their property, regardless of their consent,
19 for the purpose of defraying the expenses of government or of
20 undertakings authorized by it").  These four factors are known as
21 the "Lorber elements" or "requirements."

22         In Camilli, the Ninth Circuit considered whether an
23 uninsured employer's obligation to reimburse the Industrial
24 Commission of Arizona (the "Commission") for workers'
25 compensation payments was a "tax" within the meaning of the
26 Bankruptcy Code.  Like California, Arizona law provides for a
27 statutorily-established Special Fund, administered by the
28 Commission, "to ensure compensation for injured workers whose

3

1   employers have failed to insure them."  Camilli, 94 F.3d at 1332;
2   Ariz. Rev. Stat. § 23-1065.  Payments from the fund "act as a
3   judgment against the employer."  Id. at 1332 (quoting Ariz. Rev.
4   Stat. § 23-907).

5          According to the Ninth Circuit, there was "little or no
6   question" that the employer's obligation in Camilli met three of
7   the four Lorber requirements: "the obligation was first, imposed
8   by or under the authority of the legislature; second, for a
9   public purpose; and third, imposed under the police power of the
10  state in order to protect injured employees."  Camilli, 94 F.3d
11  at 1333.  Thus, the court's analysis focused on whether the debt
12  was an "involuntary" burden.  See id.

13         The court reasoned that although the employer chose not
14  to purchase insurance, "[t]he source of Camilli's obligation to
15  repay the workers' compensation benefits ... was not her failure
16  to obtain insurance, but the statutorily-created obligation to
17  reimburse [the fund] once [the fund] paid benefits to an
18  uninsured employee."  Id. ("The obligation to repay the Fund in
19  this case is thus the product of legislative fiat; at the time it
20  arose ... it was wholly beyond the control of the debtor.").
21  Therefore, the court held that the obligation qualified as a
22  "tax" under the Bankruptcy Code.  Id.; see id. at 1331 (stating
23  "an obligation imposed by statute as a result of a violation of
24  state law cannot ... constitute a contractual debt," as opposed
25  to a nondischargeable tax).

26         Here, the parties appear to agree that respondents'
27  obligation to reimburse the UEF meets the four Lorber
28  requirements.  Like in Camilli, there is no question that

4

1  respondents' obligation is imposed by the legislature under the
2  police power of the state for the purpose of protecting injured
3  employees whose employers are not insured.  See Cal. Labor Code §
4  3716(b) ("[T]he Uninsured Employers Fund is created to ensure
5  that workers who happen to be employed by illegally uninsured
6  employers are not deprived of workers' compensation benefits
7  ...."). Further, under Camilli, "an obligation imposed by
8  statute as a result of a violation of state law" cannot
9  constitute a "voluntary act." Camilli, 94 F.3d at 1331, 1333.
10 Thus, the obligation qualifies as an involuntary pecuniary burden
11 under Lorber.

12       Respondents argue that the UEF's reimbursement claim
13 fails to satisfy two additional requirements articulated by the
14 Sixth Circuit. See In re Suburban Motor Freight, Inc., 36 F.3d
15 484 (6th Cir. 1994) ("Suburban II") and In re Suburban Motor
16 Freight, Inc., 998 F.2d 338 (6th Cir. 1993) ("Suburban I").
17 According to the Sixth Circuit, satisfaction of the Lorber test
18 is not sufficient because that test is too broad. See Suburban
19 I, 998 F.2d at 341 ("The threat of the Lorber reasoning ... is
20 that the Government automatically wins priority for all money any
21 debtor owes it, regardless of the nature of the payments."). Two
22 additional concerns must be considered: (1) whether the pecuniary
23 obligation is universally applicable to similarly situated
24 entities; and (2) whether priority treatment for the government
25 claim disadvantages private creditors with "like claims."
26 Suburban II, 36 F.3d at 488; see id. at 487 (emphasizing the
27 admonition that "equality of distribution among creditors is a
28 central policy of the Bankruptcy Code"); see also Suburban I, 998

1  F.2d at 342 (government should not stand "ahead in line while
2  leaving unpaid private insurers to languish along with the rest
3  of the unsecured creditors").

4          In Camilli, the Ninth Circuit acknowledged the Sixth
5  Circuit's reasoning in the Suburban cases, and considered the
6  decisions "instructive."  Camilli, 94 F.3d at 1333.  The court
7  went on to examine the facts of Camilli in accordance with the
8  Suburban cases, and found that the debtor's obligation under
9  Arizona law to reimburse the state fund for workers' compensation
10 payments met the Suburban requirements.  Id. at 1334.  However,
11 the Ninth Circuit concluded "there is no need to decide whether
12 the Suburban I requirements must be met in all cases."  Id.

13         Even if the Ninth Circuit did require satisfaction of
14 the Suburban requirements in all cases, respondents' obligation
15 to reimburse the UEF would qualify as a "tax" under the
16 Bankruptcy Code.  First, the obligation is universally applicable
17 to similarly situated entities because California law requires
18 that "every employer ... shall secure the payment of [workers']
19 compensation."  Cal. Labor Code § 3700.  If an employer does not
20 provide compensation, and the UEF is compelled to make payments
21 to an injured employee, then the employer must reimburse the UEF.
22 See Cal. Labor Code § 3717(a) (authorizing a civil action by the
23 UEF against an employer for the collection of a workers'
24 compensation award paid by the UEF).  Thus, all uninsured
25 employers in California are liable for workers' compensation
26 payments made by the UEF.

27         Second, treating the obligation as a nondischargeable
28 tax does not disadvantage private creditors with "like" claims.

In <u>Camilli</u>, the Ninth Circuit distinguished the Commission's claims for reimbursement from the claims in <u>Suburban II.</u>  The court noted that in <u>Suburban II</u>, private entities, along with the state's surplus fund, contributed to the compensation of the same injuries.  <u>See</u> <u>Camilli</u>, 94 F.3d at 1334; <u>Suburban II</u>, 36 F.3d at 489.  In contrast, the state fund in <u>Camilli</u> "carr[ied] its statutorily-imposed burden alone," without competition or contribution from private entities.  <u>See</u> <u>Camilli</u>, 94 F.3d at 1334 ("No private entity competes with [the Commission] to pay 'insurance' claims for which no insurance has been bought.").

Similarly here, only the UEF provides compensation for "specific" injuries of uninsured employees.  <u>See</u> Cal. Labor Code § 3716 (the UEF is not created as a source of contribution "to insurance carriers, or self-insured, or legally insured employers").  No private entity is competing with the UEF for reimbursement of the claim in this case because the UEF carries its burden alone under California law.  <u>See</u> <u>id.</u>

A set of facts can always be hypothesized in which a private entity might conceivably be in a like position as a government entity and thus compete with the government for reimbursement against a debtor in bankruptcy.  No such circumstances are suggested here, however; and the hypothetical possibility of such a scenario is not sufficient to justify departure from established Ninth Circuit law on a similar statutory scheme designed to compensate uninsured employees.

Furthermore, in determining whether a claim is a "tax" under the Bankruptcy Code, the potential for competing "like" claims is merely a consideration, not a requirement.  <u>See</u>

7

1  <u>Camilli</u>, 94 F.3d at 1334.  The court has given due consideration
2  to such a potential – which likely existed under the Arizona
3  statutory scheme considered in <u>Camilli</u> as well.  Because the
4  UEF's claim meets the four requirements set forth by the Ninth
5  Circuit in <u>Lorber</u>, the court reverses the bankruptcy court's
6  order.

7          IT IS THEREFORE ORDERED that the bankruptcy court's
8  order granting respondents' cross-motion for summary judgment,
9  filed December 7, 2000, be, and the same hereby is, REVERSED.
10 The bankruptcy court's entry of judgment, filed December 7, 2000,
11 is hereby VACATED, and the case is REMANDED for proceedings
12 consistent with this order.
13 DATED: May 22, 2001
14                              WILLIAM B. SHUBB
15                              UNITED STATES DISTRICT JUDGE
16
17
18
19
20
21
22
23
24
25
26
27
28

8

pc

United States District Court
for the
Eastern District of California
May 23, 2001

* * CERTIFICATE OF SERVICE * *

2:00-cv-02754

George

   v.

Uninsured Employers

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  May 23, 2001, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

Michael Eubank Hansen
Michael E Hansen Attorney at Law
1500 Seventh Street
Suite 9-I
Sacramento, CA  95814

SH/WBS

BK Clerk
BK Judge (97-315889-A-7)

Arthur Dale Cavna
Department of Industrial Relations
2424 Arden Way
Suite 130
Sacramento, CA  95825

Office of the United States Trustee
United States Trustee's Office
501 I Street
Sacramento, CA  95814

Bankruptcy Trustee
PO Box 1917
Davis, CA  95617-1917

Jack L. Wagner, Clerk

by: Deputy Clerk